IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT ORTIZ SOTO

       Petitioner,

v.                                     CIV 11-0499 BB/KBM

STEVE NANCE, Acting Warden,
Southern New Mexico Correctional Facility,

       Respondent.

# PROPOSED FINDINGS
## AND
# RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Robert Soto's counseled petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.  Because he filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case.  *E.g., Abdul-Kabir v. Quarterman,* 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons,* 531 F.3d 1306, 1319 (10th Cir. 2008), *cert. denied,* 129 S. Ct. 2058 (2009).  All of the issues can be resolved on the record before me and, therefore, an evidentiary hearing is unnecessary.  *E.g., Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Hooks v. Workman,* 606 F.3d 715, 730-31 (2010); *Alverson v. Workman,* 595 F.3d 1142, 1164 (10th Cir. 2010), *cert. denied,* 131 S. Ct. 512 (2010); Rule 8(a), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS.  I recommend that this petition not be construed as a § 2241 petition, that Respondents be found to have waived exhaustion, and that the petition be denied on the merits.

# I.  Factual Background

While driving through an intersection in 2008, Petitioner collided with a motorcyclist who was making a left-hand turn.  The motorcyclist died immediately.  Petitioner's blood-alcohol content tested well in excess of the legal limit.  This accident constituted Petitioner's third arrest for drinking and driving within an eight-year-period, and a supplemental information listed Petitioner's 2001 conviction for driving under the influence.  Petitioner also had been arrested in 2006 for driving while intoxicated, though a successful suppression motion resulted in no prosecution for that offense.  *See, e.g., Doc. 8-1* at 16-17, 25-26, 51-52, 61.

As for the 2008 offense, Petitioner pleaded guilty to homicide by vehicle while intoxicated, in violation of N.M. Stat. Ann. § 66-09-101(A).  He did not contest the 2001 conviction.  The trial judge entered judgment that, among other things, imposed a sentence of imprisonment of ten years.  *See, e.g., Doc. 8-1* at 1-14.

The trial judge also decided that the 2008 offense constituted a "serious violent offense" for purposes of the New Mexico Earned Meritorious Deductions Act ("EMDA").  Under the EMDA, inmates have the ability to accrue "good time" credits.[1]  The statute defines the maximum number of credits available depending on whether the trial judge designates the crime of conviction as a "serious violent offense."  If the crime is so designated, an inmate can accrue no more than four good time credit days per month.  Otherwise, an inmate can accrue up to thirty days per month.  *See, e.g.,* N.M. Stat. Ann. § 33-2-34; *State v. Tafoya,* 148 N.M. 391, 396-97,

---

[1]  The award of the credits is not automatic.  The inmate must earn the credit by his behavior, and the award of credit must be recommended by the prison classification supervisor.  *See, e.g., Tafoya,* 148 N.M. at 399, 237 P.3d at 701; *Aguirre v. Ulibarri,* CIV 06-1062 WJ/KBM (Doc. 11 at 16) (hereinafter "Aguirre").  Moreover, there is no protected liberty interest in good-time credits under the statute.  *E.g., Davis v. Bravo,* 22 Fed. App'x 971, 972 (10th Cir. 2001) (citing *Stephens v. Thomas,* 19 F.3d 498, 501 (10th Cir. 1994) and *Lasiter v. Thomas,* 89 F.3d 699, 702 (10th Cir. 1996)).

237 P.3d 693, 698-99 (N.M. 2010).  The sentencing judge announced his reasons for his finding

on the record:

>THE COURT:  Counsel, I've compared this case to others.  I will agree with Mr. Lilley that other cases have stronger factors and it would be easier to imagine if things were different in this case how there would be stronger factors than there are.  I think the factors sufficient that this should be found in a serious violent offense and I'll explain why.

>We have a DWI homicide charge here, and so necessarily that's going to include intoxation (sic) impairment, and it's going to include death.  And whether that's a violent death or not would depend on the context of the meaning of the word "violent," but death was caused by violent means, by trauma.

>This isn't a case of one person intentionally attacking another with the intent that they end up dead, I understand that.

>The courts have found that DWI homicide can be the kind of violent offense that fits within the statute.  Is this of the realm that should fit a serious violent offense?  Well, DWI homicide by itself would not be, there must be some additional factors.

>Also, we have one prior DWI conviction.  I don't think that by itself would catapult this into a serious violent offense because the legislature's already told us what to if there's one prior felony – one prior DWI conviction, it's add a four-year-enhancement period.  So that alone wouldn't make this a serious violent offense for purposes of meritorious deduction.

>I think what distinguishes this case is the 2006 event.  And I understand Mr. Lilley's argument that as a defense attorney he feels a bit of unfair advantage to the State to be able to argue things that aren't convictions, but we all know that the law of sentencing is that anything that's relevant, that in good faith can be argued, can be argued.   And it would appear that the State has, at least, a basically good faith basis to say that in 2006 that Mr. Soto was stopped, that he was tested and found by an officer to be subject to arrest for DWI.  That he underwent a breath test and came up .20 [blood alcohol content - known as "BAC"].

>MR. KOVAC:  It was a .18, Judge.

>THE COURT:  .18.  Thank you.

There may have been arguments that were never made about whether that was a valid test that would have been admissible at trial, I understand those limitations.

But we have another episode of driving with what would appear to be a high level of alcohol in the blood breath, certainly impaired.

What's not important to me in this analysis is that would or would not have been a conviction, what is important to me in this analysis is that in 2006 Mr. Soto had already had a 2001 DWI conviction with a high BAC, *had another experience where he was stopped and arrested, and apparently was driving while impaired with a high BAC, and had an opportunity to address that problem and eliminate that risk to the public and didn't do it.* And two years later, from similar behavior, a person dies. I think that takes this out of the just a DWI homicide with one prior DWI conviction. *It's a case of someone who had the opportunity to avoid future consequences, choose not to take that opportunity.*

That's the only reason on which I would find this to be a serious violent offense, and the Appellate Courts may decide that that's not enough. I want the record to be clear that's my rationale for doing it.

It's not a case where Mr. Soto, I think, set out to hit someone, and it's not a case where he was otherwise drunken driving recklessly.

* * * * *

I think that the salient factor in this case is that the 2006 experience and the opportunity that it presented for Mr. Soto to make the changes that were necessary to prevent a 2008 death.

*Doc. 1-2* at 23-26 (emphasis added).

## II.  Procedural Background

A different attorney represented Petitioner on direct appeal. Appellate counsel raised a single issue — that the trial judge's findings were insufficient under state law to conclude the conviction qualified as a "serious violent offense" for EMDA purposes. *See, e.g., Doc. 8-1* at

57-63.  The New Mexico Court of Appeals disagreed.  *See Doc. 8-1* at 68-70.  When appellate

counsel raised the same issue in a petition for certiorari, *Doc. 8-2* at 8-13, the New Mexico

Supreme Court declined to hear the case, *id.* at 33.  That concluded the state proceedings.

Yet another different attorney represents Petitioner in this matter, and he filed the instant

action with only a few months to spare on the applicable one-year statute of limitations.  *See* 28

U.S.C. § 2244(d) (applicable to § 2241 and to § 2254 petitions).  The statute has since expired.

*Duncan v. Walker,* 533 U.S. 167, 181-182 (2001) (statute of limitations is not tolled during the

pendency of a federal petition).

The federal petition raises three claims.  First, habeas counsel asserts that the trial judge's

reliance on the 2006 arrest violates the Fourth, Fifth, and Sixth amendments.  *See Doc. 1 at 5-8.*

Second, in a memorandum submitted with the petition, counsel asserts that the EMDA violates

the Supreme Court decisions in *Watts, Apprendi,* and *Blakely*.  *See Doc. 1-1* at 3-4 (citing *State*

*v. Worrick,* 139 N.M. 247, 131 P.3d 97 (Ct. App. 2006), *cert. quashed,* 142 N.M. 436, 166 P.3d

1090 (N.M. 2007), *Blakely v. Washington,* 542 U.S. 296 (2004), *Apprendi v. New Jersey,* 530

U.S. 466 (2000), and *United States v. Watts,* 519 U.S. 148 (1997)); *see also Doc. 10* at 3-4.

Third, habeas counsel also argues that allowing the prosecution to make a "good faith" showing

of the 2006 arrest violates the Fourth and Fifth Amendments, citing to both *United States v.*

*Acosta,* 303 F.3d 78 (1st Cir. 2002) and *United States v. Ryan,* 236 F.3d 1268 (10th Cir. 2001) in

the memorandum, and *Bullcoming v. New Mexico,* ___ U.S. ___, 131 S. Ct. 2705 (2011) in the

reply.  *See Doc. 1-1* at 4-6; *Doc. 10* at 3-4.

The State's answer asserts that "Petitioner has exhausted the[se] claims."  Nevertheless,

the State declares that it "does not expressly waive the exhaustion requirement, because of the

possibility that Petitioner may amend or otherwise modify the claims raised . . . or the possibility

the Court will interpret the claims differently." *Doc. 8* at 6.  Respondent asserts that because

Petitioner is challenging the "calculation and execution" of his sentence, the "correct statute is

28 U.S.C. § 2241." *Id.*  Respondent further maintains that the petition has no merit under

applicable AEDPA standards. *Id.* at 7-10.

## III.  Analysis

### *A.  Lack of Exhaustion Waived*

Before filing for habeas relief in the federal courts, a petitioner must exhaust available

state remedies. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 730–31 (1991).  "The

exhaustion requirement is satisfied if the federal issue has been properly presented to the highest

state court." *Johnson v. Kansas Parole Bd.,* 419 F. App'x 867, 870 (10th Cir. 2011) (internal

quotations and citation omitted).  The exhaustion requirement applies regardless of whether the

federal petition is construed as arising under § 2254 or under § 2241, and in either instance the

requirement can be waived.[2]

Despite the assertions by both parties that state remedies have been exhausted, *see Doc. 8*

at 6; *Doc. 10* at 2, the record demonstrates that the constitutional issues raised in the federal

petition have never been presented to any state court.  At no time during the direct appeal did

counsel raise, or even suggest, an error of constitutional dimension.  Neither appellate counsel,

habeas counsel, nor Petitioner pursued any state post-conviction relief.  Moreover, in this federal

petition, habeas counsel specifically explains that Petitioner deliberately bypassed the state court

---

[2]  *E.g., Garza v. Davis,* 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement."); *Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) ("A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254."); *Tyson v. Jeffers,* 115 F. App'x 34, 38 10th Cir. 2004) (the "exhaustion requirement in § 2241 cases is subject to waiver") (internal quotations and citation omitted).

post-conviction remedies  because under *Worrick,* "settled" New Mexico law holds that "there is

no constitutional right to a jury trial on the issue of whether an offense qualifies as a serious

violent offense."  *Doc. 1* at 5; *see also id.* at 7 (explaining that Claim 2 was not exhausted

because "new Mexico law is settled"); *id.* at 8 (same, Claim 3).  Because New Mexico imposes

no time limit on post-conviction proceedings, however, that state remedy does remain available

to Petitioner.  In such proceedings, he could raise constitutional claims such as those raised here.

*See* N.M. RULE 5-802(A) ("This rule governs the procedure for filing a writ of habeas corpus . . .

for a determination that such custody or restraint is, or will be, in violation of the constitution or

laws of the State of New Mexico or of the United States . . . or is otherwise subject to collateral

attack."); *see also id.* (Commentary 2009 Amendments) ("there is no time limit for filing a state

petition for a writ of habeas corpus").

     Yet Respondent's answer in fact waives any exhaustion requirement.  Respondent tacitly

acknowledges the same by citing a recent Tenth Circuit decision which holds that assertions of

both exhaustion and lack thereof, as well as both lack of exhaustion and lack of merit, will waive

the exhaustion requirement:

> A habeas application cannot be granted unless the applicant
> has exhausted available state remedies. . . .  A state may waive the
> exhaustion requirement, but only if "the State, through counsel,
> expressly waives the requirement." . . .  Defendant asserts that the
> State waived the requirement by conceding exhaustion in its
> supplemental answer.
>
>     The State's supplemental answer to Defendant's § 2254
> application states:  "[The State] submits [Defendant] has exhausted
> his issues by bringing the claims before the New Mexico state
> courts." . . .  Nevertheless, the State argues on appeal that it did not
> waive the exhaustion requirement because the quoted statement
> did "not establish the clarity of intent to waive exhaustion that is
> required by 28 U.S.C. § 2254(b)(3).". . .   It relies on an
> unpublished opinion of another circuit . . . which held that a state
> concession of exhaustion in its answer to a § 2254 application was

not an express waiver.  But the reasoning of that opinion was later rejected in a published opinion of that circuit. . . .  In any event, [it] is contrary to our precedent.  In *Gonzales v. McKune,* 279 F.3d 922, 926 & n. 8 (10th Cir. 2002) (en banc), we held that a state "expressly waived" the exhaustion requirement when its answer to the habeas application "admitted that petitioner has properly exhausted the issues now presented to this Court.". . .  The language used by the State in this case is virtually the same as that recognized as an express waiver in *Gonzales.*  Moreover, there is additional evidence of waiver here.  In its initial answer and motion to dismiss, the State had requested dismissal without prejudice (for failure to exhaust) or, in the alternative, dismissal with prejudice; but its supplemental answer requested only dismissal with prejudice, demonstrating that the State was now asking for a decision on the merits and not a decision based upon the exhaustion requirement.

Because the State expressly waived the exhaustion requirement, the district court erred in dismissing Defendant's application without discussion of the waiver.  True, a court can consider exhaustion and dismiss unexhausted claims *sua sponte.* . . . .  But it would be an "unusual step" for a court to dispose of a case on exhaustion grounds *sua sponte* after the state has expressly waived an exhaustion defense. . . .  We have never decided what, if any, circumstances would justify such a step.  *See Pike v. Guarino,* 492 F.3d 61, 74 (1st Cir. 2007) ("A federal court may choose, in its sound discretion, to reject a state's waiver of . . . nonexhaustion. . . .  In exercising this discretion, concerns of comity, federalism, and judicial economy weigh heavily in the balance.").  And we do not do so now.  The district court in the first instance should consider the propriety of addressing exhaustion despite the State's waiver.

*Richwine v. Romero,* 2011 WL 2066552 at **2-3 (10th Cir. 2011) (certain citations omitted).

Instead of insisting on exhaustion, a federal court may choose to dispose of a § 2254 or § 2241 petition on the basis of lack of merit.  *E.g., Granberry v. Greer,* 481 U.S. 129, 135 n. 7 (1987) ("it is appropriate for the court of appeals to dispose of nonmeritorious petitions without reaching the nonexhaustion issue"); *Teagle v. Champion,* 21 F. App'x 790, 792 (10th Cir. 2001) ("Because we are not convinced that this [§ 2241] petition is meritless, we exercise our discretion and hold that the administration of justice would be better served in this case by

requiring petitioner to exhaust his state remedies."); 28 U.S.C. § 2254(b)(2) (federal courts have discretion to deny habeas relief notwithstanding failure to exhaust).  That is the case here.

### B.  Petition Should Be Construed As § 2254

A §2254 petition challenges the validity of a conviction and sentence, while a § 2241 petition challenges the execution of that sentence.  *E.g., Walck v. Edmondson,* 472 F.3d 1227, 1234 (10th Cir. 2007) ("our prior cases have established that the somewhat ambiguous term 'judgment of a State Court' within § 2254 refers only to conviction and sentence . . . .  The deferential standard of review contained within § 2254 is, therefore, only properly invoked when an individual in state custody collaterally attacks the validity of a state conviction and/or sentence").  "Consequently, a § 2241 petition often challenges a prison administrative decision rather than a state court judgment."  *Titsworth v. Mullin,* 415 F. App'x 50, 56 (10th Cir. 2011) (challenge to denial of "enhanced credits" that would entitle inmate to "immediate release").

Here, Petitioner challenges the portion of his sentence that characterized his third offense as a "serious" for EMDA purposes.  As such, his challenge is to the sentence imposed by the trial court and the section of the EMDA that sentence invokes.  Petitioner is not challenging how particular good time credits will be calculated according to that determination.  Accordingly, the Court should find that this petition arises exclusively under § 2254.

### C.  Consequences For § 2254 or § 2241 Designation Are Immaterial In This Instance

Even if the petition were characterized as arising under § 2241, that designation is immaterial for the purposes of resolving the instant matter because: (1) habeas relief is not available under either statute absent a constitutional violation, (2) *Teague* nonretroactivity principles apply in both

situations, and (3) a certificate of appealability ("COA") is necessary if an appeal ensues from the denial of relief under either provision.[3]

Furthermore, traditionally in habeas proceedings, a federal court will presume facts found by the tribunal at issue are correct absent a showing under a heightened standard by the petitioner. While that principle has long been codified in the § 2254 statute,[4] and even applies to facts implicitly found by the tribunal at issue,[5] it does not appear in the § 2241 statute.

Only a very few decisions explicitly address whether the presumption also applies to § 2241, and the Tenth Circuit is not among them. But because the presumption is grounded in long-established habeas jurisprudence prior to enactment of the AEDPA that does not vary depending on the characterization of the petition,[6] I believe the Tenth Circuit would apply the presumption of

---

[3] *See, e.g., Davis v. Bravo,* 22 Fed. App'x at 971, n. 1 (10th Cir. 2001) ("Davis' petition is actually a hybrid in the sense that it challenged both his underlying conviction and the execution of his sentence. It does not matter, however, whether Davis' petition is denominated as arising under 28 U.S.C. § 2241 or 28 U.S.C. § 2254 because he would need a COA in either case."); *Villafranco v. United States,* 2006 WL 1049114 at * 22 (D. Utah 2006) ("Though *Teague v. Lane* was decided in the context of a state prisoner's petition for a federal writ of habeas corpus . . . its retroactivity standards have been applied to federal post-conviction remedies without distinction between statutory remedies and common-law writs.") (citing *Love v. Menifee,* 333 F.3d 69, 74 (2nd Cir. 2003)); *LaVoy v. Snedeker,* 2004 WL 3778602 at * 4 & n.7 (D.N.M. 2004) (KBM) ("Whether the claim is pursued under § 2254 or § 2241, habeas relief is not available absent a constitutional violation") (28 U.S.C. § 2254(a) and 28 U.S.C. § 2241(c)(3)).

[4] *E.g., Jefferson v. Upton,* ___ U.S. ___, ___, 130 S. Ct. 2217, 2220- 22 (2010) (discussion of pre-AEDPA presumption of correctness principle and 1966 statutory codification); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005) ("we presume the Texas court's factual findings to be sound unless Miller–El rebuts the "presumption of correctness by clear and convincing evidence." § 2254(e)(1). The standard is demanding but not insatiable.").

[5] *Marshall v. Lonberger,* 459 U.S. 422, 433 (1983) (and cases cited therein).

[6] *See, e.g., Patton v. Yount,* 467 U.S. 1025, 1032, n. 7 (1984) ("The Court of Appeals appears to have thought that [under *Irvin*] there is no presumption of correctness owed to the trial court's finding that a jury as a whole is impartial. . . . *Irvin* was decided five years before Congress added to the habeas corpus statute an explicit presumption of correctness for state-court factual findings . . . and two years before this Court's opinion in *Townsend.* . . . *It may be that there is little practical difference between the Irvin* 'manifest error' standard and the "fairly supported by the record" standard of the amended habeas statute. . . . In any case, we do not think the habeas standard is any less stringent."); *Townsend v. Sain,* 372 U.S. 293, 316 (1963) ("This Court has consistently held that

correctness in the § 2241 context as well, particularly where, as here, a state criminal conviction and sentence is the subject of the petition.[7]

### D.  Claims Do Not Merit Habeas Relief

*Apprendi.*  Petitioner did not pursue post-conviction relief because the New Mexico courts hold that the *Apprendi/Blakely* line of cases do not apply to the EMDA since application of the EMDA does not increase the statutory maximum sentence.  *See Doc. 1-1* at 4; *Worrick,* 139 N.M. at 252, 131 P.3d at 102.  *Worrick* relies on *Montoya,* which in turn cites the separate concurrence in *Morales.  See State v. Montoya,* 137 N.M. 713, 717-18, 114 P.3d 393, 397-98 (Ct. App.) (*Apprendi, Booker* and *Blakely* not applicable because "the effect of the EMDA is not to change anything with regard to any maximum sentence"), *cert. denied,* 137 N.M. 766, 115 P.3d 229 (N.M. 2005); *State v. Morales,* 131 N.M. 530, 39 P.2d 747 (Ct. App.), *cert. denied,* 131 N.M. 738, 42 P.3d 843 (N.M. 2002)).  These decisions are consistent with federal law.  Supreme Court "precedents make clear . . . that the statutory maximum for *Apprendi* purposes is the

_____

state factual determinations not fairly supported by the record cannot be conclusive of federal rights."); *United States v. Morgan,* 346 U.S. 502, 512 (1954) ("It is presumed the proceedings were correct and the burden rests on the accused to show otherwise.") (and cases cited therein); *Burns v. Wilson,* 346 U.S. 137, 144 (1953) (stating in§ 2241 action that the record made "it plain that the military courts have heard petitioners out on every significant allegation which they now urge. Accordingly, it is not the duty of the civil courts simply to repeat that process—to re-examine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for habeas corpus.").

[7] *E.g., Sprague v. Kroger,* 2010 WL 3664524 at * 3 (D. Or. 2010) ("Petitioner's double jeopardy claim is properly brought under 28 U.S.C. § 2241. . . .  Accordingly, this Court reviews the state court'' factual findings with a presumption of correctness and reviews conclusions of law *de novo*.") (citing *Hoyle v. Ada County,* 501 F.3d 1053, 1058-59 (9th Cir. 2007 and *Allen v. Roe,* 305 F.3d 1046, 1050 (9th Cir. 2002)); *compare Aquiar v. Tafoya,* 95 F. App'x 931, 932-33 (10th Cir. 2004) ("We review *de novo* the district court's dismissal of a § 2241 habeas petition . . . and we apply the standards set forth under 28 U.S.C. § 2254(d) to the state court decision."), *and Thomas v. Crosby,* 371 F.3d 782, 812 (10th Cir. 2004) ("Section 2241 proceedings, in contrast, are governed by the common law requirements for habeas petitions.  Some of § 2254's restrictions on habeas relief, however, are simply codified versions of these common law principles;" discussing exhaustion requirement), *with Walck,* 472 F.3d at 1235 (in pretrial detainee § 2241 case "deference normally accorded state court judgments under § 2254 does not apply . . . we review habeas claims made pursuant to § 2241 . . . *de novo*.").

maximum sentence a judge may impose solely on the basis of the facts . . . admitted by the defendant." *Cunningham v. California,* 549 U.S. 270, 283 (2007) (internal quotations and citations omitted); *see also United States v. O'Brien,* 130 S. Ct. 2169, 2181-83 (Stevens, J. concurring) (noting same for context of mandatory minimum sentences).

Petitioner asks this Court to forge new territory and hold to the contrary.  But my research does not reveal any different status from when I first visited this issue— "all state decisions have concluded the *Apprendi/Blakely/Booker* cases do not apply to the EMDA.  I have not found any Supreme Court decision that holds otherwise."  *Aguirre,* at 16 & n.9 (citing *Morales, Montoya,* and *Worrick,* as well as *State v. Ayala*, 140 N.M. 126, 140 P.3d 547 (Ct. App.), *cert. denied,* 140 N.M. 279, 142 P.3d 360 (N.M. 2006), and *State v. Bravo,* 139 N.M. 93, 128 P.3d 1070 (Ct. App. 2005), *cert. quashed,* 140 N.M. 847, 149 P.3d 995 (N.M. 2006)).[8]

Petitioner does not cite, nor have I found, **any** decision that applies the *Apprendi* and *Blakely* line of cases simply because accumulating less good time credits affects "the actual time a prisoner will spend incarcerated" by lengthening the date for an early release.  *Doc. 1-1* at 4. Furthermore, in essence, habeas counsel is asking this Court to fashion a new procedural rule based on *Apprendi* and apply it to a case on collateral review, something that the Supreme Court expressly was unwilling to do.  *See Schriro v. Summerlin,* 542 U.S. 348, 353 (2004) (*Ring v.*

---

[8]   In addition, other courts, including a prior decision by this Court, subscribe to the view that these Supreme Court cases are not applicable to good time credit statutes because the statutory maximum sentence is unaffected.  *See Davis,* 22 Fed. App'x at 972 ("As to *Apprendi,* the magistrate simply noted that it had no application to this case.") (underlying Magistrate Judge proposed findings are not available electronically through CM/ECF); *LaVoy,* 2004 WL 3778602 at ** 2, 4 (noting state held EMDA statute constitutional under *Apprendi* in *Morales* and that "the good time statute does not effect the penalty for maximum sentence [for the crime]"); *see also Dupont v. Nolan,* 2008 WL 544947 at * 3 (D. Mass. 2008) (The application of § 129 and the consequent forfeiture of good time credits did not result in a sentence above the otherwise applicable statutory maximum.  The sentence was neither contrary to, nor an unreasonable application of, *Apprendi* and/or *Blakely.*.").

*Arizona,* 536 U.S. 584 (2002), which was based on same rationale as *Apprendi,* does not apply

retroactively).  Probably in recognition of this outcome, habeas counsel relegates *Apprendi* and

*Blakely* to "analogous" status.  He instead focuses on *Watts* and other decisions to support his

due process and Confrontation Clause arguments.

   ***Preponderance Standard.***  After the plea colloquy, the trial judge gave trial counsel the

option of dealing with the "serious violent offense" issue that same day or at sentencing, and

counsel responded:  "I think I'm prepared to argue it today." *Doc. 1-2* at 15.  The prosecutor

opened by noting a few aspects from the written memorandum he filed the day before the

hearing, including Petitioner's prior conviction and subsequent arrest in 2006 where his "breath

result was .18." *Doc. 1-5* at 2 (prosecutor sentencing memorandum filed 4/22/09 at 2:34 p.m.).;

*Doc. 1-2* at 16, 24 (transcript of change of plea hearing held 4/23/09 at 10:00 a.m.).  Trial

counsel had seen the memorandum and, although he had "hop[ed] it would [have been] a littler

bit earlier so I could get a written response" he did not "think it's needed." *Doc. 1-2* at 17.  As

for the 2006 arrest, trial counsel argued:

> The second violation – and, you know, we can – I always –
> and I don't blame the fault of the State when sometimes you go to
> sentencing they want to stand up and say – kind of dump things or
> add on things that have been dismissed.  It kind of irks me that the
> Court kind of goes into that too, sometimes, about things that were
> dismissed.   "Well, you've had five arrests but only three
> convictions."  Well, its always my position, we don't know what
> the situation was on those other situations.
>
> Now, certainly Mr. Soto's case, ***on the face he had a high
> BAC on the case that was dismissed,*** but it was dismissed for a
> constitutional violation.  ***So it's hard for me to go back and argue
> whether that breath sample – your know, for either one of us to
> go back.  The case was gone.***  I didn't represent him on that case.
> I think all of those other cases that they found serious violent
> felony are different from Mr. Soto's case.

* * * *

> So, in sum, Judge, I would ask the court not to find that this is a serious violent felony. ***I don't disagree with really any of the law or anything that Mr. Kovach said,*** it's just the manner in which it's interpreted. That's all I've got. Thank you.

*Id.* at 20-22 (emphasis added).

Reliance on *Watts* affords Petitioner no basis for relief.  In *Watts,* the Supreme Court noted that its prior *McMillan* and *Nichols* decisions found "that application of the preponderance standard at sentencing generally satisfies due process."  *Watts,* 519 U.S. at 156 (citing *McMillan v. Pennsylvania,* 477 U.S. 79, 91-92 (1986) and *Nichols v. United States,* 511 U.S. 738, 747-48 (1994)).  The *Watts* court specifically held that, because a "jury's verdict of acquittal" is not a "finding of any fact," an acquittal "does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."  *Watts,* 519 U.S. at 156, 157.  "[S]ome process is due to a defendant who challenges information to be used against him in sentencing, but the Supreme Court has not specifically delineated the scope of the inquiry a sentencing court must conduct."  *Janick v. Superintendent, Franklin Correctional Facility*, 404 F. Supp. 2d 472, 482 (W.D.N.Y.2005).[9]

---

[9] The *Janick* decision indicates that if *Watts, McMillan,* and *Nichols* set the preponderance of the evidence standard as the constitutionally minimal showing necessary to satisfy due process, they do not establish the quantum of proof necessary to satisfy the preponderance standard.  *See Janick,* 404 F. Supp. 2d at 483  ("Supreme Court precedent does not shed much light on the minimum burden of proof that must be met in this type of sentencing situation. . . .  Neither *McMillan* nor *Nichols* provides much guidance on this issue since both cases lack an analysis of what the proper burden of proof should be with respect to factual issues that are in contention at sentencing.  Significantly, the Supreme Court observed in McMillan that '[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all.' . . .  Thus, a reasonable reading of *McMillan* is that preponderating evidence of disputed factual issues at sentencing is sufficient to comport with due process but is not a necessary condition.").

Trial counsel, the trial judge, and the state appellate courts all accepted the prosecutor's representation that testing at the 2006 event revealed a .18 blood alcohol level. Petitioner has never challenged that: (1) this was the reported level; (2) a level of that magnitude constitutes impairment, or (3) the evidence was suppressed in 2006 because of a lack of reasonable suspicion to make the stop in the first instance, not because the results of the subsequent blood alcohol test were unreliable. *See Doc. 1-5* at 2 ("After a series of delays due to recusals and a continuance by defense counsel, the Court granted a motion to dismiss/suppress based on a lack of reasonable suspicion to stop the defendant."). The New Mexico Court of Appeals decided that the three incidents, all with blood alcohol levels that showed impairment, coupled with other facts established at the hearing and not mentioned by habeas counsel, were sufficient to establish a "serious violent offense" under state law.

> All three BACs were at least twice the legal limit and grew worse over the approximately eight-year period . . .
>
> New Mexico cases have consider high BACs and the number of incidents over time as factors . . . repeat arrests or convictions and high BACs tend to show that the defendant had or should have had the "knowledge" necessary to find "recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm."
>
> * * * *
>
> . . . the victim died as a result of head trauma . . . although the judgment and sentence did not recite either a specific finding that the offense was committed in a physically violent manner or the specific details of the incident that led to this conclusion, the district court in fact discussed these matters at the hearing and, . . . may have believed the physically violent manner in which the incident happened was self-evident.

*Doc. 8-1* at 68-70.

Even if that decision were erroneous as a matter of state law, it affords no basis for relief. Absent a violation of constitutional magnitude, this Court cannot grant a habeas petition.  Again, habeas counsel does not cite, nor have I found, *any* precedent holding that a prosecutor's unchallenged representation of a blood alcohol level to the sentencing judge is insufficient under the preponderance standard as a matter of constitutional law.  Moreover, I note that, in a case from this District where *Apprendi/Blakely* was inapplicable, District Judge Browning found that representations in a presentence report concerning blood alcohol level *were* sufficient to support the relevant sentencing inquiry by a preponderance of the evidence.  *See United States v. Jojola,* 375 F. Supp. 2d 1251, 1252-53 (D.N.M. 2005).

*Confrontation Clause.*  Finally, habeas counsel asserts that because the blood alcohol records are considered "testimonial" in nature, Petitioner "had a Constitutional right to confront the analyst who made the [2006] certification" at an evidentiary hearing where he could challenge this "hearsay evidence" as unreliable.  In support he cites the Supreme Court's decision in *Bullcoming* and the First Circuit decision in *Acosta,* but neither case offers any support for granting habeas relief.  *See Doc. 10* at 4-6.

*Acosta* did not involve the reliability of blood alcohol tests, or mandate that particular evidentiary proceedings take place prior to a trial judge entering findings about a sentencing factor.  Neither do the *Watts/McMillan/Nichols* decisions above.  For the purposes of this case, at best, *Acosta* simply stands for the general propositions that the Federal Sentencing Guidelines allow consideration of information that bears "sufficient indicia of reliability" for sentencing purposes and that the Fourth Amendment exclusionary rule does not forbid the introduction of suppressed evidence for sentencing purposes.  *See Acosta,* 303 F.3d at 82, 86.

It is true that in *Bullcoming,* the question was "whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification . . . through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Bullcoming,* 131 S. Ct. at 2710.  The Court held "that surrogate testimony of that order does not meet the constitutional requirement" because the "accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial." *Id.*  However, not only is *Bullcoming* a June 23, 2011 decision that has not been made retroactive to cases on collateral review, the *Crawford* Confrontation Clause principle applied in *Bullcoming*  has not been extended to sentencing proceedings.[10]

Wherefore,

**IT IS HEREBY RECOMMENDED** that the petition be deemed a § 2254 petition, but that regardless of how the petition is characterized, that Respondents be found to have waived exhaustion and the claims be denied on the merits.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability issue.

---

[10] *E.g., United States v. Garcia,* 324 F. App'x 705, 708 (10th Cir. 2009) (quoting and emphasizing portion of *United States v. Bustamante,* 454 F.3d 1200, 1202 (10th Cir. 2006), where it stated " *Crawford* concerned the use of testimonial hearsay statements *at trial* and does not speak to whether it is appropriate for a court to rely on hearsay statements at a sentencing hearing."); *United States v. Bustamante,* 454 F.3d 1200, 1202 (10th Cir. 2006) ("*Crawford* concerned the use of testimonial hearsay statements at trial and does not speak to whether it is appropriate for a court to rely on hearsay statements at a sentencing hearing.  As we have explained, "[t]he Supreme Court has made clear that the constitutional requirements mandated in a criminal trial as to confrontation and cross-examination do not apply at non-capital sentencing proceedings." *United States v. Beaulieu,* 893 F.2d 1177, 1180 (10th Cir. 1990)."); *United States v. Hernandez,* 2011 WL 1516482 at ** 10-14 (D.N.M. 2011)  (extensive survey of law; District Judge Browning holding that Confrontation Clause does not apply to pretrial detention hearings).

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE